IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

EMERGENCY MEDICAL CARE
FACILITIES, P.C.,

     Plaintiff,

v.                           No. 15-1014

BLUECROSS BLUESHIELD OF
TENNESSEE, INC. and VOLUNTEER
STATE HEALTH PLAN, INC.,

     Defendants.
_____

---

ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION
FOR ORAL ARGUMENT
_____

*BACKGROUND AND PROCEDURAL HISTORY*

The Plaintiff, Emergency Medical Care Facilities, P.C. ("EMCF"), is a professional corporation comprised of physicians and healthcare workers, located in Jackson, Tennessee, that provides services at hospital emergency departments. Defendant BlueCross BlueShield of Tennessee, Inc. ("BCBSTN"), a corporation organized and doing business under the laws of the State of Tennessee, underwrites and administers health insurance to its enrollees in Tennessee. Defendant Volunteer State Health Plan, Inc. ("VSHP"), a wholly-owned subsidiary of Southern Diversified Business Services, Inc., which is a wholly-owned subsidiary of BCBSTN, operates as a TennCare HMO under the plan names BlueCare and TennCare Select.

TennCare is Tennessee's managed care system for state residents eligible for Medicaid. *Chattanooga-Hamilton Cnty. Hosp. Auth. v. United Healthcare Plan of the River Valley Inc.*, No. M2013-00942-COA-R9-CV, 2014 WL 2568456, at *1 (Tenn. Ct. App. June 6, 2014), *appeal*

*granted* (Oct. 23, 2014).  Medicaid, established by an amendment to the Social Security Act, *see* 42 U.S.C. § 1396, *et seq.*, is "a cooperative federal-state program through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals."  *Fuller ex rel. Smith v. Emkes*, No. M2010-01590-COA-R3-CV, 2011 WL 2571537, at *4 (Tenn. Ct. App. June 28, 2011).  States receiving funds under the Medicaid program are required to comply with relevant federal statutes and regulations.  *Id.*  In order to provide healthcare services to TennCare enrollees, managed care organizations ("MCOs") privately contract with healthcare providers and reimburse them at mutually agreed-on rates for medical services rendered.  *Chattanooga-Hamilton Cnty. Hosp. Auth.,* 2014 WL 2568456, at *1.

VSHP serves as an MCO for the western region of Tennessee, which includes Madison County, where Jackson is located.  The State of Tennessee pays MCOs a per capita amount monthly to cover the cost of health coverage.  *River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 48 (Tenn. Ct. App. 2002).  In return for this payment, the MCO must make it possible for medically necessary services to be provided to TennCare members.  *Id.*  If the MCO pays out less to providers than the total amount it receives in these payments, it turns a profit.  *Id.*  If it spends more on enrollee care than it receives from the state, the MCO must absorb the loss.  *Id.* Thus, it is the MCO which bears the economic risk associated with the administration of healthcare services to those enrolled in TennCare.  *Id.*

The relationships of MCOs such as VSHP with the Tennessee Bureau of TennCare are governed by contractor risk agreements.  These contracts require that MCO provider agreements "incorporate[] by reference all applicable federal law and regulations and state laws, TennCare rules and regulations, consent decrees or court orders, and revisions of such laws, regulations, consent decrees or court orders shall automatically be incorporated into the provider agreement,

as they become effective." http://www.tn.gov/tenncare/forms/ MCOStatewideContract.pdf at §

A.2.12.9.47. MCOs must also "implement State Budget Reductions and Payment Reform

Initiatives." *Id.* at § A.2.13.1.10.

To participate in the BlueCare network, providers are required to enter into a Group

Practice Agreement (the "Agreement") and the BlueCare Attachment, as amended. An

amendment to the BlueCare Attachment permits providers to also participate in the TennCare

Select program and to render services to its members. Effective October 1, 2008, EMCF entered

into the contracts, pursuant to which it became a participating provider in the BlueCare and

TennCare Select programs. The BlueCare Attachment, as amended, stated that the provider

would be compensated the lesser of the fee schedule or billed charges. Section Q thereof

provided as follows:

> The parties agree to recognize and abide by all applicable State and Federal laws,
> regulation, and guidelines.
>
> In addition, all applicable Federal and State laws or regulations, and revisions of
> such laws or regulations shall automatically be incorporated by reference herein
> as they become effective. In the event that changes in the Group Practice
> Agreement, or this BlueCare Attachment, as a result of revisions in applicable
> Federal or State law materially affect the position of one or more parties, the
> parties agree to negotiate further Attachments as may be necessary to correct any
> inequities.

(D.E. 1-3 at PageID 173.)

In its fiscal year 2011-12 budget, the Tennessee General Assembly appropriated $1.8

billion for TennCare medical services. In making this allocation, the legislature authorized the

Tennessee Commissioner of Finance and Administration "to impose service limitations, to

reduce optional eligibility categories, mandate standardized reimbursement levels, and/or reduce,

or limit, optional benefits in the TennCare Program as necessary to control program expenditures." (*Id.* at PageID 373 (2011 Tenn. Pub. Acts Ch. 473, § 48, Item 6).)

A notice was issued by VSHP on May 6, 2011 advising providers of rate reductions/reimbursement changes to be made by all TennCare MCOs as a result of the state fiscal year 2012 budget, including payments made to emergency department physicians. The changes included a $50 cap on reimbursement for non-emergency professional services performed in hospital emergency departments. In an updated notice issued December 6, 2011, providers were advised that "[w]hether or not [a hospital emergency department] visit is deemed emergent will be determined by looking at diagnosis codes 1 and 2 on the claim and cross referencing with the Medical Emergency Code List [on VSHP's website]." (*Id.* at PageID 241.) These notices, Defendants aver, constituted changes in state law that were automatically incorporated into the Agreement.

On August 13, 2014, the Plaintiff brought a putative class action against BCBSTN in the Circuit Court of Madison County, Tennessee, alleging breach of contract and breach of implied covenant of good faith under Tennessee law, and violation of Tennessee's prompt pay requirement under Tennessee Code Annotated §§ 56-32-109 and 56-7-105, *et. seq.* and of the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-101, *et. seq.* ("TCPA"). EMCF also sought declaratory judgment pursuant to Tennessee Code Annotated § 29-14-101, *et seq.*

An amended complaint was filed on January 6, 2015, in the state action, adding VSHP as a Defendant, dropping the prompt pay claim, and citing to federal law in support of Plaintiff's breach of contract and declaratory judgment claims. On January 29, 2015, the Defendants removed the action to this Court on the grounds that these claims presented federal questions

falling within this Court's jurisdiction under 28 U.S.C. § 1331. Before the Court is their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 7.)

*STANDARD OF REVIEW*

The Rule permits dismissal of a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In reviewing such a motion, courts are to "construe[] the complaint in the light most favorable to the plaintiff and accept[] all factual allegations as true." *Tr. of Detroit Carpenters Fringe Benefit Funds v. Patrie Constr. Co.*, ___ F. App'x ___, 2015 WL 873504, at *3 (6th Cir. Mar. 3, 2015). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted). "In addition to the allegations in the complaint, [the court] may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011). A Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [it] to relief." *A Metal Source, LLC v. All Metal Sales, Inc.*, ___ F. App'x ___, 2015 WL 1865744, at *2 (6th Cir. Apr. 24, 2015).

*MOTION TO DISMISS*

Breach of Contract.

The elements of a breach of contract claim under Tennessee law are "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3)

damages caused by the breach of the contract." *Brown v. Bd. of Educ. of Shelby Cnty. Sch.*, 47 F.

Supp. 3d 665, 687 (W.D. Tenn. 2014) (quoting *Ingram v. Cendant Mobility Fin. Corp.*, 215

S.W.3d 367, 374 (Tenn. Ct. App. 2006)).  The parties' assertions focus on the second element.

In the breach of contract section of its amended pleading, the Plaintiff alleged that

Defendants

> breached the Agreement by failing and refusing, and continuing to fail and refuse,
> to perform all of [their] obligations thereunder, including, without limitation,
> [their] obligation to reimburse [Plaintiff] at the rate set forth in the Agreement for
> the emergency medical services they provide to BlueCare and TennCare Select
> enrollees.

(D.E. 1-4 at PageID 421 (Am. Compl. ¶ 37).)  The amended complaint made reference to the

Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd; 42 C.F.R. §

438.114 and Tennessee Code Annotated § 56-7-2355 in support of EMCF's claims.

The EMTALA, part of the Social Security Act, is designed to prevent "patient dumping,"

that is, refusal by hospital emergency departments to accept or treat patients with emergency

conditions if they do not have medical insurance.  *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*,

582 F.3d 47, 51 (1st Cir. 2009); *Johnson v. Va.*, No. 3:06cv00061, 2007 WL 1556555, at *4

(W.D. Va. May 24, 2007); *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 713 (E.D.

Mich. 2005).  It requires emergency departments, upon a request by an individual for

examination or treatment for a medical condition, to "provide for an appropriate medical

screening examination within the capability of the hospital's emergency department, including

ancillary services routinely available to the emergency department, to determine whether or not

an emergency medical condition . . . exists."  42 U.S.C. § 1395dd(a).  An "emergency medical

condition" is defined by the statute as "a medical condition manifesting itself by acute symptoms

of sufficient severity (including severe pain) such that the absence of immediate medical

attention could reasonably be expected to result in . . . placing the health of the individual . . . in serious jeopardy, . . . serious impairment to bodily functions, or . . . serious dysfunction of any bodily organ or part[.]" 42 U.S.C. § 1395dd(e)(1)(A).

Tennessee Code Annotated § 56-7-2355 defines "emergency medical condition" as "a medical condition that manifests itself by symptoms of sufficient severity, including severe pain, that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to potentially result in" serious impairment or dysfunction.  Tenn. Code Ann. § 56-7-2355(a)(1).  The statute prohibits a health benefit plan from denying coverage for emergency services "if the symptoms presented by an enrollee . . . indicate that an emergency medical condition could exist[.]" Tenn. Code Ann. § 56-7-2355(b)(1).  The Plaintiff alleges that, under the state statute, the existence of an emergency medical condition is to be determined at the time the patient first presents at the emergency department, not upon the making of a diagnosis after a physician or other medical professional has obtained medical history, performed an examination, and conducted such tests as he or she deems necessary and appropriate in order to reach a diagnosis.  The Agreement provides that an "emergency" thereunder includes an emergency medical condition as that term is defined in the Tennessee statute and the EMTALA.

Section § 438.114, a federal managed care Medicaid regulation, requires MCOs to provide coverage and payment for emergency and post-stabilization services.  42 C.F.R. § 438.114(b)(1).  The regulation prohibits MCOs from "limit[ing] what constitutes an emergency medical condition . . . on the basis of lists of diagnoses or symptoms[.]"  42 C.F.R. § 438.114(d)(1)(i).

Defendants submit that nothing in the statutes or regulation addresses payments to providers for conducting screening and stabilization services or prohibits the $50 fee. Specifically, the movants cite to a comment on the proposed § 438.114 as supportive of their assertions:

> Comment:  One commenter was concerned about the prohibition against denying claims based on lists of symptoms or final diagnosis codes.  A number of States require MCOs to pay a screening fee even if there is no emergency, but do not require them to pay for the service based on their emergency services fee schedule.  The commenter wanted to know if there was a conflict with the regulation.

> Response:  There is no conflict in this situation if the determination was made taking into account the presenting symptoms rather than the final diagnosis.  We prohibit the use of codes (either symptoms or final diagnosis) for **denying** claims because there is no way a list can capture every scenario that could indicate an emergency medical condition as required in the [Balanced Budget Act of 1997].  An MCO . . . **may pay** claims using those lists and require coverage of screens even if no emergency medical condition exists.  However, we do not require coverage of a screen if it reveals no emergency medical condition (as opposed to EMTALA requirements on Medicare participating hospitals).

67 Fed. Reg. 40989, 41030 (Defendants' emphasis).  Defendants argue that, in this case, the diagnosis code is used to pay, rather than deny, claims, whether at the $50 non-emergency rate or at the scheduled emergency rate.  Thus, their actions do not run afoul of the regulation.

In response, EMCF insists that the Defendants' motion misses the point.  Plaintiff does not challenge the insurers' right to pay the flat rate of $50 for *non-emergency* services.  Instead, its position is that, because medical services to TennCare enrollees were *emergency* services based on the patient's presentment to the emergency department, Defendants did not have the unilateral right to later reclassify those emergency services as non-emergency services, based upon the final diagnosis code, in order to reimburse at the lower $50 non-emergency rate as opposed to the fee schedule emergency rate.  In support of its assertion that this action

constitutes a breach of the Agreement, Plaintiff points to the following statement contained in the

Federal Register with regard to § 438.114:

> Section 1932(b)(2)(B) of the [Social Security] Act defines emergency services as covered inpatient or outpatient services that are furnished by a provider qualified to furnish these services under Medicaid that are needed to evaluate or stabilize an "emergency medical condition." An "emergency medical condition" is in turn defined in section 1932(b)(2)(C) of the [Social Security] Act as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in placing the health of the individual . . . in serious jeopardy, serious impairment of body functions, or serious dysfunction of any bodily organ or part. **While this standard encompasses clinical emergencies, it also clearly requires MCOs to base coverage decisions for emergency services on the apparent severity of the symptoms at the time of presentation, and to cover examinations when the presenting symptoms are of sufficient severity to constitute an emergency medical condition in the judgment of a prudent layperson.**

67 Fed. Reg. 40989, 41029 (emphasis added). This, EMCF submits, clarifies that the regulation

prohibits MCOs from doing exactly what Defendants did in this case.

The parties' filings are, regretfully, much like "ships passing in the night." The

Defendants focus on the fact that the statutes and regulation relied upon by EMCF do not

mandate an amount of reimbursement while the Plaintiff concentrates on the classification of

emergency versus non-emergent, with neither adequately speaking to the other's argument.[1] For

this reason, and considering the standard by which it must evaluate a motion to dismiss, the

Court is unpersuaded that dismissal is appropriate at this juncture on the grounds posited by the

movants. Accordingly, the claim for breach of contract will be allowed to proceed.

---

[1]The Defendants have sought leave to present oral argument on the instant motion (D.E. 22). However, they have filed a reply to the Plaintiff's response to the motion and EMCF has filed a surreply. Considering the amount of briefing that has occurred, the Court is unconvinced that a hearing would result in any additional meaningful clarification. The motion for hearing, even though it is unopposed by the Plaintiff, is DENIED.

<u>Breach of Implied Covenant of Good Faith and Fair Dealing.</u>

The amended complaint separately alleged as its second cause of action a breach of implied covenant of good faith and fair dealing. "Every contract imposes upon the parties a duty of good faith and fair dealing in the performance and interpretation of the contract." *Snyder v. First Tenn. Bank, N.A.*, 450 S.W.3d 515, 518 (Tenn. Ct. App. 2014), *appeal denied* (Oct. 15, 2014). However, a claim based on the implied covenant of good faith and fair dealing is not an independent cause of action in Tennessee. *First Tenn. Bank Nat'l Ass'n v. Republic Mortg. Ins. Co.*, 276 F.R.D. 215, 220 (W.D. Tenn. 2011); *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009). Rather, "it is part of an overall breach of contract claim." *Jones*, 308 S.W.3d at 907. To the extent EMCF asserts a stand-alone claim for breach of implied covenant of good faith and fair dealing, it is DISMISSED. *See LSREF2 Baron, LLC v. T.J. Colony Park P'ship*, No. 3:13-CV-514-TAV-HBG, 2014 WL 3735725, at *7 (E.D. Tenn. July 28, 2014) (separate claim for breach of implied covenant of good faith and fair dealing under Tennessee law did not state a plausible claim for relief and, thus, could not withstand Rule 12(b)(6) motion).

<u>TCPA.</u>

In response to the dispositive motion, EMCF agrees to dismiss this claim without prejudice. Accordingly, it is hereby DISMISSED.

<u>Declaratory Judgment.</u>

In light of its denial of the Defendants' motion to dismiss the breach of contract claim, the dispositive motion with respect to declaratory judgment is also denied.

*CONCLUSION*

For the reasons set forth herein, the motion to dismiss is GRANTED as to the stand-alone breach of implied covenant of good faith and fair dealing claim and the TCPA claim. It is DENIED as to the remainder. The Defendants' motion for oral argument is DENIED.

IT IS SO ORDERED this 5th day of June 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE