IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

EMERGENCY MEDICAL CARE
FACILITIES, P.C.,

    Plaintiff,

v.                                No. 15-1014

BLUECROSS BLUESHIELD OF
TENNESSEE, INC. and VOLUNTEER
STATE HEALTH PLAN, INC.,

    Defendants.

---

ORDER REMANDING CASE TO STATE COURT

---

I. BACKGROUND AND PROCEDURAL HISTORY

On or about August 13, 2014, the Plaintiff, Emergency Medical Care Facilities, P.C. ("EMCF"), brought a putative class action in the Circuit Court for Madison County, Tennessee, against the Defendant, BlueCross BlueShield of Tennessee, Inc. ("BCBST"), alleging breach of contract and breach of implied covenant of good faith and fair dealing under Tennessee law; violation of Tennessee's prompt pay requirement under Tennessee Code Annotated §§ 56-32-109 and 56-7-105, *et seq.*; and violation of the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-101, *et seq.* ("TCPA"). EMCF also sought declaratory judgment pursuant to Tennessee Code Annotated § 29-14-101, *et seq.*[1] The complaint was amended on or about January 6, 2015, naming BCBST subsidiary Volunteer State Health Plan, Inc. ("VSHP") as an additional defendant, dropping the prompt pay claim, and citing to federal law and regulation

---

[1]In this initial pleading, the Plaintiff sought declaratory judgment that, pursuant to Section Q of the BlueCare Attachment described below, BCBST's reduction of payment to providers materially affected EMCF's position under the parties' agreements and that BCBST was contractually bound to negotiate further contracts in light of the payment change.

in support of Plaintiff's state law and declaratory judgment claims. The matter was removed to this Court on January 29, 2015, on federal question grounds. (Docket Entry ("D.E.") 1.) In an order entered June 5, 2015, the Court dismissed Plaintiff's TCPA and stand-alone breach of implied covenant of good faith and fair dealing claims. (D.E. 35.) Before the Court is the Defendants' motion for summary judgment on the remaining claims for breach of contract and for declaratory judgment. (D.E. 100.)

## II. FACTS[2]

VSHP has served as a managed care organization ("MCO") in Tennessee's TennCare program since prior to 2008. TennCare is the state's managed care system for residents eligible for Medicaid. *Chattanooga-Hamilton Cty. Hosp. Auth. v. UnitedHealthcare Plan of the River Valley Inc.*, 475 S.W.3d 746, 749 (Tenn. 2015). BCBST is financially at-risk for its MCO product, known as BlueCare, and contractually obligated to follow state budget reductions, payment reform initiatives and state law. Another program, TennCare*Select*, is distinct from TennCare and serves a population selected by the state. BCBST is an administrative services organization ("ASO") for TennCare*Select* and is not financially at-risk therefor.

EMCF has been a participating emergency medical provider in the BlueCare and TennCare*Select* networks under contracts including Group Specialist (Practice) Agreement, BlueCare Attachment, TennCare*Select* Amendment and associated amendments. Section Q of the BlueCare Attachment provides as follows:

---

[2] In a footnote contained in its response to the Defendants' statement of undisputed facts, Plaintiff noted that it repeated those facts for the Court's convenience. Counsel is advised, however, that the Local Rules of this district *require* that the response to statements of facts "be made on the document provided by the movant or on another document *in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant*. In either case, *the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant*." LR 56.1(b) (emphasis added).

> Compliance with Laws. The parties agree to recognize and abide by all applicable State and Federal laws, regulation, and guidelines.
>
> In addition, all applicable Federal and State laws or regulations, and revisions of such laws or regulations shall automatically be incorporated by reference herein as they become effective. In the event that changes in the Group Practice Agreement, or this BlueCare Attachment, as a result of revisions in applicable Federal or State law materially affect the position of one or more parties, the parties agree to negotiate such further Attachments as may be necessary to correct any inequities.

(D.E. 1-3 at PageID 173, D.E. 1-4 at PageID 463.) Section 10 of the 2009 BlueCare Compliance Amendment states that

> This Amendment incorporates by reference all applicable federal and state laws, TennCare rules and regulations, consent decrees or court orders and revisions of such laws, regulations, consent decrees or court orders shall automatically be incorporated into this Amendment, as they become effective. In the event that changes in this Amendment are a result of revisions and applicable federal or state law materially affects the position of either party, Contractor and Participating Provider agree to negotiate such further amendments as may be necessary to correct any inequities.

(D.E. 1-3 at PageID 226-27.) The parties' agreements incorporate the BlueCare Provider Administration Manual (the "Manual") as part of the contracts and provide that the Manual may be revised from time to time.

On or about April 8, 2011, the Bureau of TennCare issued to BCBST and other MCOs official notice of program changes resulting from the proposed Tennessee fiscal year 2012 budget. All state departments were required to submit proposed budgets that included spending reductions. This action was due to the expiration of one-time federal funding and the continued impact of a national economic downturn on Tennessee revenues. Three categories of budget reduction items were to be implemented by MCOs, including changes to reimbursement for non-emergency professional services performed in hospital emergency departments. Specifically, the correspondence stated that "Most of you have implemented a reimbursement policy for facilities

whereby they are only paid a[n Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA")][3] screening fee for non-emergency [emergency department] visits. The budget directs MCOs to pay [emergency department] physicians their average reimbursement amount associated with CPT 99281 for non-emergency visits." (D.E. 104-11 at PageID 2521.) The changes were to go into effect on July 1, 2011.

BCBST notified its network providers of the anticipated July 1, 2011, reimbursement changes in a letter dated May 6, 2011. Twenty days later, TennCare sent an email to MCOs clarifying that reimbursement for non-emergency emergency department visits was capped at $50. A letter dated June 14, 2011, from BCBST advised providers as follows:

> VSHP has been directed to pay [emergency department] physicians VSHP's average reimbursement amount based on CPT 99281 for non-emergency visits. **Update: [Emergency department] physicians will continue to get their contracted rate for non-emergency visits not to exceed $50.00. Whether or not the visit is deemed emergent will be determined by looking at diagnosis codes 1 and 2 on the claim and cross referencing with the Medical Emergency Code List which can be found on our website at www.vshptn.com/providers.**

(D.E. 104-15 at PageID 2639.)

Additional rate reductions for other providers, to go into effect on January 1, 2012, were communicated to MCOs by TennCare in a letter dated November 17, 2011. This missive reiterated the $50 cap on reimbursement for non-emergency emergency department visits. A third letter from BCBST to providers dated December 6, 2011, advised that the cap would remain in place. These reductions in reimbursement continued to be in effect. It is the position of the Defendants that this change was a "directive" by the state which caused the capped fee

---

[3]The EMTALA, part of the Social Security Act, is designed to prevent "patient dumping," that is, refusal by hospital emergency departments to accept or treat patients with emergency conditions if they do not have medical insurance. *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 51 (1st Cir. 2009); *Johnson v. Va.*, No. 3:06cv00061, 2007 WL 1556555, at *4 (W.D. Va. May 24, 2007); *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 713 (E.D. Mich. 2005).

policy to be enacted into law.  Thus, the policy was, pursuant to the terms of the parties' contracts, automatically incorporated into their agreement.

The Plaintiff has alleged in this action that the cap on reimbursements constituted a breach of the contractual agreements between it and the Defendants.  Specifically, EMCF claims that the Defendants reclassified emergency services performed by emergency room doctors as non-emergency in order to justify paying a reduced reimbursement rate.  It is averred that Defendants took the position that payment of the $50 flat rate was authorized where the final diagnosis indicated the services were non-emergent, despite the fact that the determination of whether services are emergent or non-emergent must be made at the time of the patient's arrival in the emergency department.  In its amended pleading, the Plaintiff contended as follows:

> The provision of emergency medical services is of the utmost importance in ensuring that individuals presenting at an emergency department are given the immediate medical attention that they need to reduce the likelihood that the person's health is put in serious jeopardy or that there is a serious impairment to the person's bodily functions or organs.
>
> Pursuant to [the EMTALA], physicians and other health care professionals working in a Medicare-participating hospital emergency department are required to provide to any individual who comes to the emergency department and makes a request, or on whose behalf a request for medical treatment is made:  (1) "an appropriate medical screening examination . . . including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition" exists.
>
> Tenn[essee] Code[] Ann[otated] § 56-7-2355, Emergency Services, defines "Emergency Medical Condition" as:
>
>> A medical condition that manifests itself by symptoms of sufficient severity, including severe pain, that a prudent layperson, who possesses an average knowledge of health and medicine could reasonably expect the absence of immediate medical attention to potentially result in:
>>
>> (A)   Placing the person's health in serious jeopardy;
>>
>> (B)   Serious impairment to bodily functions; or

5

>    (C)    Serious dysfunction of any bodily organ or part.
>
> Accordingly, under Tenn[essee] Code[] Ann[otated] § 56-7-2355, whether a condition is an "emergency medical condition" is determined at the time when the patient first arrives at the emergency department, not on the diagnosis reached after the physician or other medical professional has obtained medical history, examined the patient, and run such tests as the treating physician deems necessary and appropriate to diagnose the patient.
>
> Moreover, 42 C.F.R. § 438.114(d)(1)(i) requires that Medicaid [MCOs] cover and pay for emergency services and poststabilization care services, and expressly prohibits an MCO from limiting what constitutes an emergency medical condition on the "basis of lists of diagnoses or symptoms."

(D.E. 1-4 ¶¶ 6-10 at PageID 414-15.) The Group Practice Agreement among the parties defined "emergency" as including any "emergency medical condition" as defined by the EMTALA and § 56-7-2355.

> The declaratory judgment section of the amended complaint stated as follows:
>
> . . . [S]hould the Court find that state law required that BCBST[] reduce the payment made to the [Plaintiff] for the emergency medical services rendered by the [Plaintiff] to BlueCare and TennCare enrollees, then the [Plaintiff] seeks a declaratory judgment that the state law is inconsistent with Tennessee state law and is in conflict with and preempted by federal law. In the alternative, the [Plaintiff] seeks a declaratory judgment that, pursuant to Section Q of the BLUECARE Attachment, as amended by Section 10 of the 2009 BLUECARE Compliance Amendment: (i) such change has materially affected the [Plaintiff's] position; and (ii) BCBST[] is contractually bound to "agree to negotiate such further amendments as may be necessary to correct any inequities" that have resulted from such change.

(*Id.* ¶ 55 at PageID 423.)

In their notice of removal, the Defendants stated that EMCF's assertions in its amended complaint that the EMTALA and its regulations required additional reimbursement and its action for declaratory judgment presented federal questions which formed the basis for this Court's jurisdiction. Plaintiff has not sought remand back to state court.

III. ANALYSIS

Title 28 U.S.C. § 1441(a) permits a defendant to remove a civil action from state court to federal court if the plaintiff could have brought the matter in the federal district court. *A Forever Recovery, Inc. v. Twp. of Pennfield,* 606 F. App'x 279, 280 (6th Cir. 2015). "It is a federal court's unflagging duty to verify that it has jurisdiction over the case before it, lest it pronounce its opinion in contravention of Article III or the bounds imposed by Congress." *Naji v. Lincoln*, ___ F. App'x ___, 2016 WL 6636762, at *2 (6th Cir. Nov. 9, 2016); *see also United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("a federal court always has jurisdiction to determine its own jurisdiction"). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). Where no challenge to jurisdiction has been made by a litigant, the question should be raised by the Court *sua sponte*. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 392 (6th Cir.), *cert. denied sub nom. Direccion General de Fabricaciones Militares v. Rote,* 137 S. Ct. 199 (2016). The removal statutes "are strictly construed against removal, such that doubt should be resolved in favor of remand." *Lexington-Fayette Urban Cty. Gov't Civil Serv. Comm'n v. Overstreet*, 115 F. App'x 813, 816 (6th Cir. 2004).

As noted above, removal in this case was based on federal question jurisdiction.[4] Such jurisdiction "exists if federal law creates the cause of action or the plaintiff's right to relief necessarily depends upon a resolution of a substantial question of federal law." *A Forever Recovery, Inc.*, 606 F. App'x at 281 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)) (internal quotation marks omitted). It is well-settled that "the mere presence of a federal issue in a state cause of action does not automatically confer

---

` [4]It appears from the face of the amended complaint that the parties are not diverse.

federal[]question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see also Auto-Owners Ins. Co. v. Ergonomics Plus, Inc.*, 63 F. Supp. 3d 754, 758-59 (E.D. Mich. 2014) (same). There is a presumption that a cause of action lies outside a federal court's limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The first path to federal question jurisdiction describes "the vast majority of cases that come within the district court's original jurisdiction." *Franchise Tax Bd.*, 463 U.S. at 9. The EMTALA creates a cause of action against participating hospitals by individuals and medical facilities who have suffered personal harm or financial loss as a direct result of the participating hospital's violation of the statute. 42 U.S.C. § 1395dd(d)(2)(A)-(B). Courts have held that suits against MCOs under the statute, however, cannot stand. *See Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 587 (6th Cir. 2009) (the EMTALA authorizes private suits expressly against hospitals); *Bourbon Cmty. Hosp., LLC v. Coventry Health & Life Ins. Co.*, Civil Action No. 3:15-cv-00455-JHM, 2016 WL 51269, at *6 (W.D. Ky. Jan. 4, 2016) ("Therefore, it appears that EMTALA does not apply to MCOs since the [d]efendants are not hospitals and because [p]laintiffs [(hospitals)] were not directly injured from any violation of EMTALA."); *Colon-Ramos v. Clinica Santa Rosa, Inc.*, 938 F. Supp. 2d 222, 226 (D.P.R. 2013) ("Based on legislative intent and the plain wording of § 1395dd, we conclude that no cause of action exists against [insurance companies or similar health care plan providers].").

Indeed, the court in *Bourbon Community Hospital, LLC* faced an issue nearly identical to that presented here. In that case, contracts between the plaintiff hospitals and the defendant MCOs required all parties to comply with federal and state laws, regulations and standards. *Bourbon Cmty. Hosp., LLC*, 2016 WL 51269, at *1. Federal law mandated that the defendant

MCOs provide coverage for members who presented with emergency medical conditions, based on the prudent layperson standard, to emergency departments, while the hospital plaintiffs were required to comply with the EMTALA. *Id.* A year after the contracts were entered into, Kentucky MCOs sent letters to hospitals advising they would begin making $50 "triage" payments for certain emergency department services. *Id.* at *1-2. The hospitals considered this change in reimbursement a breach of their contracts and brought suit in federal court, claiming they were entitled to the full, that is, higher, contractual rate for all healthcare, including emergency services. *Id.* at *2. The court articulated as follows:

> Plaintiffs merely allege that their contracts with Defendants require them to abide by all federal and state laws, including EMTALA. Simply because Plaintiffs are required to abide by EMTALA does not mean that this suit "arises" under federal law. . . . Here, EMTALA is only relevant in the sense that it requires hospitals to provide stabilizing treatment or appropriate transfer of an individual once that patient has been deemed to have an emergency medical condition under the prudent layperson standard[, citing 42 U.S.C. § 1395dd and 42 C.F.R. § 438.114]. The action at hand deals with the payment of claims that Defendants, after patients have been screened and treated as having an emergency condition under the prudent layperson standard, determine actually dealt with non-emergent conditions. This payment structure in no way requires the interpretation of Defendant MCOs' responsibilities under EMTALA because it does not apply to them. Additionally, this action in no way requires an interpretation of Plaintiff hospitals' responsibilities under EMTALA because, regardless of the fee structure, Plaintiffs allege they are still fully performing their duties under the statute.

*Id.* at *7. Consequently, the court held there was no basis for federal question jurisdiction. *Id.* Based on the decision in *Bourbon Community Hospital, LLC* and the other cases cited herein, the Court finds that federal question jurisdiction in this matter may not rest upon the existence of a cause of action against the Defendants arising from the EMTALA.

The second avenue to jurisdiction, the so-called "substantial federal question doctrine," constitutes a "special and small category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th

9

Cir. 2007). Pursuant to this doctrine, "a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Mikulski*, 501 F.3d at 565; *Funderwhite v. Joint Apprenticeship & Training Comm. of Cleveland Journeymen Plumbers Local No. 55*, ___ F. Supp. 3d ___, 2016 WL 3913678, at *3 (N.D. Ohio July 20, 2016). The rationale is that it

> captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

In *Gunn v. Minton*, 133 S. Ct. 1059 (2013), the United States Supreme Court, upon observing that "[i]n outlining the contours of this slim category, we do not paint on a blank canvas[; u]nfortunately, the canvas looks like one that Jackson Pollock got to first," clarified that jurisdiction under this category is conferred where a federal issue is (1) "necessarily raised," (2) "actually disputed," (3) "substantial" and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569-70 (2016) (same). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn,* 133 S. Ct. at 1065 (internal quotation marks omitted).

The federal question before this Court is not substantial. Courts have identified certain factors that affect the substantiality of the federal interest:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 570; *Funderwhite*, 2016 WL 3913678, at *5. "While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Mikulski*, 501 F.3d at 570; *Funderwhite*, 2016 WL 3913678, at *5. In *Gunn*, the Court pointed to examples of sufficient substantiality as the government's "direct interest in the availability of a federal forum to vindicate its own administrative action" and where the "decision depends upon the determination of the constitutional validity of an act of Congress which is directly drawn in question." *Gunn,* 133 S. Ct. at 1066 (citing *Grable*, 545 U.S. at 315 & *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921)) (internal quotation marks omitted). The Court will address each factor in turn.

There is no federal agency involved in this matter and there has been no allegation that federal agency action violated the law. Rather, the dispute at bar features non-governmental entities and their alleged breach of a state law contract. Thus, the first factor weighs against substantiality. *See Funderwhite*, 2016 WL 3913678, at *5 (where no federal agency was a party to the contract which was the subject of a state breach of contract action and no federal agency played a part in the alleged breach, federal interest was not substantial).

In considering the "importance" of a federal question, courts are to determine whether it "implicates any broader or more substantial issue." *Funderwhite*, 2016 WL 3913678, at *6; *see Gunn,* 133 S. Ct. at 1066 ("The substantiality inquiry . . . looks . . . to the importance of the issue

to the federal system as a whole."). Here, there is no broader national policy at risk. Thus, the second factor also militates against the exercise of jurisdiction.

The resolution of any federal question will not resolve this matter. According to the pleadings, the Court must first determine whether Tennessee state law required BCBST to reduce payments for emergency medical services. The only federal issue would arise if, upon answering that question in the affirmative, the Court ruled on whether such law was inconsistent with or preempted by the EMTALA. This issue need not be addressed at all, however, if the Court were to conclude that the state law requiring the reduction was inconsistent with other state law or that, pursuant to the BlueCare Attachment, the change materially affected the Plaintiff's position and BCBST was contractually bound to "agree to negotiate such further amendments as may be necessary to correct any inequities" resulting from the change. Accordingly, the third factor does not favor a finding that the federal question here is substantial.[5] *See Dominion Pathology Labs, P.C. v. Anthem Health Plans of Va., Inc.*, 111 F. Supp. 3d 731, 737 (E.D. Va. 2015) (*Gunn* not satisfied where the plaintiff's breach of contract claim was predicated in part on conduct not related to federal law and the court could resolve the dispute without referencing federal law).

As for the fourth factor, the issue is not necessarily "anomalous" or "isolated" and a decision by this Court could potentially provide meaningful precedent in Tennessee with respect to similar provider contracts if a ruling was made on the federal preemption issue. However, as noted above, it is uncertain whether the federal law question would in fact be answered by this Court and, in any case, this factor is insufficient to tip the scale in favor of substantiality in light of the Court's conclusions as to the other substantiality factors.

---

[5] The fact that it may not be necessary to rule on any federal issue in this case also supports remand under the preceding importance factor, as where the court has decided that it is unnecessary to interpret federal law in order to rule on plaintiff's case, the importance factor has not been met. *Funderwhite*, 2016 WL 3913678, at *6.

In addition to a lack of substantiality, the federal question posited here is not "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *Gunn*, 133 S. Ct. at 1065. Although the absence of a cause of action is not determinative in deciding whether an exercise of jurisdiction will disturb the balance of federal and state responsibilities, it is a factor that weighs against such exercise. *Funderwhite*, 2016 WL 3913678, at *6. Moreover, courts have recognized, for purposes of finding this factor was not satisfied, that "[m]ost insurance disputes arise under state law and are resolved in state court." *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014); *Dominion Pathology Labs*, 111 F. Supp. 3d at 739.

Other courts have found that state law claims making reference specifically to the EMTALA without asserting a cause of action do not satisfy the parameters of the substantial federal question doctrine. In *Alade v. Barnes-Jewish Hospital, Inc.*, No. 4:12-CV-497 CAS, 2012 WL 2598091 (E.D. Mo. 2012), the plaintiff, a psychiatry resident at Barnes-Jewish Hospital, brought various state law claims against the facility because of mistreatment he allegedly received as a result of his military service. *Alade*, 2012 WL 2598091, at *1. The suit was removed to federal court in part on grounds that the complaint raised significant federal questions with respect to the EMTALA. *Id.* at *3. The district court found federal question jurisdiction did not exist based on the EMTALA, noting that, while Alade alleged the defendant violated the statute, he did not assert a cause of action thereunder, none of his state law claims were based on alleged violations of the EMTALA and his claims involved only private defendants rather than federal agencies. *Id.* at *5.

In *Williams v. EDCare Management, Inc.*, Civ. Action No. 1:08-CV-278, 2008 WL 4755744 (E.D. Tex. Oct. 28, 2008), the plaintiffs were a professional association that contracted

13

with emergency room doctors to provide emergency services to local hospitals. *Williams*, 2008 WL 4755744, at *1. After the owner of two of the hospitals terminated the contract and entered into an agreement with one of the defendants, another emergency care physicians group, plaintiffs filed suit in state court for tortious interference, breach of contract, civil conspiracy and business disparagement. *Id.* Following the plaintiffs' assertion that the defendants engaged in illegal acts constituting violations of the EMTALA, the matter was removed to federal court on federal question grounds. *Id.* at *1-2.

In support of their tortious interference claims, the plaintiffs alleged the defendants "attempt[ed] to force plaintiffs to medically screen out an arbitrarily chosen percentage of patients who were uninsured to increase the hospitals' profits"; "requir[ed] and agree[d] that physicians screen out indigent and/or uninsured patients and admit insured and Medicare patients who would not otherwise be admitted"; violated laws regulating hospitals and had as a goal "a reduction . . . in service to uninsured patients, specifically in contravention of the EMTALA. *Id.* at *6. Rejecting the defendants' argument against remand, the court noted that, "[e]ven if [p]laintiffs' causes of action require the court to interpret EMTALA and federal Medicare laws, it does not necessarily follow that federal question jurisdiction exists" where the bulk of the claims were based on state law theories of recovery. *Id.* at *7. Nor did such jurisdiction exist merely because the state causes of action required interpretation of federal statutes. *Id.* at *6.

The plaintiff in *Vance v. McCurtain Memorial Hospital*, No CIV 10-282-FHS, 2010 WL 3910175 (E.D. Okla. Oct. 4, 2010), filed a suit in state court alleging medical negligence. *Vance*, 2010 WL 3910175, at *1. She supported her state law claims with assertions of purported EMTALA violations by the defendant but did not assert a cause of action under the statute. *Id.* at *2. The court found no federal question jurisdiction, stating that

> [t]o the extent issues of interpretation and relevance need to be resolved in the context of EMTALA regulations, however, the state court is quite competent to resolve those issues. The mere mention of EMTALA regulations in the state court proceedings, or the fact that such regulations may need to be interpreted by the state court, does not necessarily equate with the existence of a substantial question of federal law. To hold otherwise would result in the balance between federal and state court responsibilities being disturbed by the opening of federal courts to any state court action touching upon or mentioning federal law.

*Id.* at *3 (internal citations omitted). The court also noted that the plaintiff could ultimately prevail on her claims without reliance on the EMTALA. *Id.*

Because not all of the *Gunn* requirements have been met in this case, this Court has no basis for subject matter jurisdiction over EMCF's claims.

The fact that the Plaintiff sought relief with respect to the EMTALA by way of a request for a state declaratory judgment does not expand the Court's jurisdiction. A federal court does not have original jurisdiction, or acquire jurisdiction upon removal, when a federal question is raised in a complaint seeking a state declaratory judgment if the district court would not have jurisdiction over the same action if brought under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 (the "Act"). *See Franchise Tax Bd.*, 463 U.S. at 18-19; *Ohio v. Nobile & Thompson Co., L.P.A.*, No. 2:12-cv-01053, 2013 WL 753837, at *2 (S.D. Ohio Feb. 27, 2013). The Act authorizes the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration," without granting further relief. 28 U.S.C. § 2201. "The point of the statute is to create a remedy for a *preexisting* right enforceable in federal court. It does not provide an independent basis for federal subject matter jurisdiction." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014) (emphasis added) (internal quotation marks omitted); *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) ("the Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts."). Thus, "[a] federal court accordingly must have jurisdiction already" before a

plaintiff may bring a declaratory judgment action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (internal quotation marks omitted). As the Court has found no grounds for subject matter jurisdiction, Plaintiff's declaratory judgment action provides no independent basis therefor. *See Bourbon Cmty. Hosp., LLC,* 2016 WL 51269, at *6-7.

## IV. CONCLUSION

For the reasons set forth herein, this case is hereby REMANDED to the Circuit Court of Madison County, Tennessee. The Clerk is DIRECTED to mail a certified copy of this order to the clerk of said court.

IT IS SO ORDERED this 19th day of January 2017.

s/ J. DANIEL BREEN<br>
CHIEF UNITED STATES DISTRICT JUDGE